FILED

B. Benedict Waters
6230 Wilshire Boulevard, # 182
Los Angeles, CA 90048-5104
310-967-3943
*lacityparkingscamvictim@yahoo.com*

2010 JUL 19 PM 4: 45

CLE...
CENT... ANGELES

BY

Plaintiff, *Pro Se*

# United States District Court
# Central District of California

B. Benedict Waters,

      *Plaintiff,*

      vs.

Howard Sommers Towing, Inc., Stacey
Angst, Rickenbacker Group, Inc., Experian
Information Solutions, Inc., Hollywood
Tow Service, Inc., Juan Carlos Casas,
LDC Collection Systems, John Doe 1,
Steve T., John Doe 3, Guevara, Carlos
Casas aka Juan Carlos Casas, and
City of Los Angeles

      *Defendants.*

) Case No. CV10 5296 -DMG(JCGx)
)
)
)
)
)
)      **Complaint**
)
)    DEMAND FOR JURY TRIAL
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*ORIGINAL*

RECEIVED

COMPLAINT – FAIR CREDIT REPORTING ACT

ORIGINAL

7/28/2010 1:46:58 PM  Receipt #: 145541
        Cashier : LLUNG [LA 1-1]
Paid by: R. BENEDICT WATERS
2:CV10-05296
2010-066900        5 - Civil Filing Fee (1)
Amount :                      $66.00
2:CV10-05296
2010-510000        11 - Special Fund F/F (1)
Amount :                     $150.00
2:CV10-05296
2010-066400        Filing Fee - Special (1)
Amount :                     $100.00
Cash  Payment :              350.00

## Jurisdiction

1.     This court has original subject matter jurisdiction of the federal law claims under 15 U.S.C. § 1681p, 28 U.S.C. § 1331; and, has supplemental jurisdiction of the pendent state law claims under <u>Fed.R.Civ.P.</u> 18(a); <u>28 USC § 1367(a)</u>

## Venue

2.     Jurisdiction of this action is **not** founded on diversity of citizenship.

## Alter Ego

3.     The within Claims are brought against **Casas** under California common law pursuant to California 's *alter ego* doctrine.

4.     At all times herein relevant there was a unity of interest between **Casas** and **Rickenbacker**; **Casas** exercised complete and total control over **Rickenbacker**, was the sole owner of all the stock of said Defendant, as well as the sole Shareholder, sole Director, and sole Officer of Rickenbacker Group, Inc., with **Casas** functioning *simultaneously* as Chief Executive Officer and as President and as Secretary and as Chief Financial Officer.

5.     At all times herein relevant, **Casas**  was and is the agent for service of process for **Rickenbacker**.

6.     Plaintiff is informed and believes and on that basis alleges that at the time of incorporation **Rickenbacker** was undercapitalized.

7.     At all times herein relevant, Plaintiff is informed and believes and thereon alleges that **Rickenbacker** had and has little or no assets.

8.     At all times herein relevant, **Casas** entered into a contract and agreement with **Hollywood Tow** and **Experian** using the corporate shell of Rickenbacker Group, Incorporated with the intent to use said corporate shell as a shield against personal liability while committing the acts herein complained of.

9.     At all times herein relevant, Plaintiff is informed and believes and on that basis alleges that **Casas** and **Rickenbacker** use and share the same attorney: <u>Rusconi, Foster & Thomas.</u>

10.     At all times herein relevant, **Casas** had and exercised complete control and dominion over **Rickenbacker** and used that control to cause said Defendant to commit the acts herein complained.

11.     On approximately 2003 October 20, **Casas** was the incorporator of Rickenbacker Collections Services, Incorporated, a California corporation.

12.     On approximately 2004 June 01, **Casas** amended the Articles of Incorporation of Rickenbacker Collection Services, Incorporated to change its name to Rickenbacker Group, Incorporated.

13.     Not applying the alter-ego doctrine will produce inequities:  **Casas** ' scheme to escape personal liability for his knowing, deliberate and calculated ***continuing*** violations of the Fair Credit Reporting Act (Pub.L. No. 90-321, 84 Stat. 1128 (codified at 15 U.S.C. §§ 1681 - 1681x)(hereinafter sometimes "FCRA") and Fair Debt Collection Practices Act (as amended by Pub. L. 109-351, §§ 801-02, 120 Stat. 1966 (2006) codified at 15 U.S.C. §§ 1692 - 1692p) (hereinafter sometimes "FDCPA") will be successful, such success will motivate and cause **Casas** to ***continue*** misusing the corporate shell of **Rickenbacker** as part of an unlawful moneymaking scheme of violating the FCRA and FDCPA with impunity as said corporation has little or no assets, Plaintiff and any other future or similarly situated consumer will not be able to recover fees, costs and expenses in seeking to vindicate rights under the FCRA and FDCPA as otherwise intended by Congress because the **Rickenbacker** corporate shell has little or no assets, and **Casas** will ***continue*** his willful, knowing, deliberate and calculated **repeat and continuous** violations of state and federal consumer protections laws including the Fair Credit Reporting Act and Fair Debt Collection Practices Act to the detriment of Plaintiff and any other future or similarly situated consumer.

14.     Accordingly, pursuant to the alter ego doctrine **Casas** is separately liable to Plaintiff for any and all  damages adjudged against and/or ordered to be paid by Defendant Rickenbacker Group, Inc. as a result of this civil litigation.

# Emotional Distress

15.   As used herein and throughout this Complaint, the term **emotional distress** includes but is not limited to the ensuing conduct, causes, reasons, actions, consequences, results and effects.

16.   In doing the things herein complained of, Defendants engaged in atrocious, repeated, extreme and outrageous conduct well outside the bounds tolerated by a decent or civilized society including **but not restricted to** the following:

a.   Ignored Plaintiff's repeated attempts to informally resolve some of the matters herein complained of.

b.   Contrived a scheme to extort money from Plaintiff by planting bogus, phony information in Plaintiff's consumer credit file.

c.   Refused to obey state laws designed to protect consumers including Plaintiff.

d.   Refused to obey federal laws designed to protect consumers including Plaintiff.

e.   Knowingly published and re-published phony, bogus, scandalous, defamatory, false information thereby **repeatedly** libeling Plaintiff.

f.   Added phony, bogus information to Plaintiff's credit file then refused to investigate the information which Defendants already knew to be false and knew already was part of their extortion scheme.

/ / /

18.    In doing the things herein complained of, Defendants showed a reckless and conscious disregard of the probability that their conduct would cause Plaintiff to suffer severe, extreme and ongoing emotional distress, mental anguish, physical pain and anxiety.

19.    The Ninth Circuit has not addressed the type of evidence necessary to support an award of emotional distress damages under the FCRA, but has stated in other contexts that "[w]*hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court.*" ***Zhang v. Am. Gem Seafoods, Inc.*** *(9th Cir. 2003) 339 F.3d 1020, 1040* (holding in a discrimination action that the plaintiff's "*testimony alone is enough to substantiate the jury's award of emotional distress damages*") (ellipsis and citations omitted).   See also ***Johnson v. Hale*** *(9th Cir. 1994) 13 F.3d 1351, 1352 - 1353* (recognizing that "*compensatory damages may be awarded for humiliation and emotional distress **established by testimony** or **inferred from the circumstances**, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms.*").   And the trier of fact, the jury, must be so instructed.

20.    Damages recoverable under the FCRA "*include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses*" due to a denial of credit. ***Stevenson v. TRW, Inc.*** *(5th Cir. 1983) 987 F.2d 288, 296.* "*Courts have allowed recoveries where . . . the plaintiff suffered mental anguish based on events other than a denial of credit.*" ***Zola***, *2001 WL 2106933, at \*7* (citations omitted).   See ***Guimond v. Trans Union Credit Info. Co.*** *(9th Cir. 1995) 45 F.3d 1329, 1333* ("[N]*o case has held that a denial of credit is a prerequisite to recovery under the FCRA.*"

/ / /

21.     Plaintiff suffered and continues to suffer, as an actual and proximate result of the continuing conduct herein complained of, severe, extreme and ongoing emotional distress, mental anguish, physical pain and anxiety, including but not limited to:

a.     Sleeplessness;

b.     Myokymia, including at times physical pain;

c.     Periods of anxiety with accompanying shaking and/or heart palpitations;

d.     Night sweats on an average of twice a week;

e.     Dyspnea; and,

f.     Constant feelings of helplessness and powerlessness.

22.     The concepts that a corporation, even one the size of Experian Information Solutions, Inc. is too big to fail or is too big to obey the law or it is too big to be held accountable for its actions that cause emotional distress are no longer accepted in today's society.

## Consciousness of Guilt

23.     *"It has always been understood -- the inference indeed is one of the simplest in human experience -- that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by* **bribery** *or spoliation, is receivable against him as an indication of his*

1  *consciousness that his case is a weak or unfounded one; and from that*

2  *consciousness may be inferred the fact itself of the cause's lack of truth and*

3  *merit."* **McQueeney v. Wilmington Trust Co.** *(3d Cir. 1985) 779 F.2d 916, 921 - 922*

4  *quoting* 2 Wigmore sec. 278(2) (Chadbourne Rev. 1979).

5  24.    As used herein the term **"consciousness of guilt"** includes but is not limited

6  to falsehoods and other fraud, fabrication of evidence, suppression of evidence.

7

8  ## Judicial Estoppel

9  25.    Defendants are barred by the <u>Doctrine of Judicial Estoppel</u> from asserting as

10  a defense or adopting the position that a Defendant or Defendants named in this

11  litigation is not subject to and liable for compensatory damages as a consequence

12  of said Defendant's or Defendants' a *per se* violation of a federal constitutional

13  right.

14  26.    *"The federal doctrine of judicial estoppel precludes a party from*

15  *asserting a position in a judicial proceeding which is inconsistent with a*

16  *position previously successfully asserted by it in a prior proceeding. 'Thus,*

17  *the 'essential function and justification of judicial estoppel is to prevent the*

18  *use of intentional self-contradiction as a means of obtaining unfair*

19  *advantage in a forum provided for suitors seeking justice. [Citation.]'*

20  [Citation.] *The primary purpose of the doctrine is not to protect the litigants,*

21  *but to protect the integrity of the judiciary. [Citations.] The doctrine does not*

22  *require reliance or prejudice before a party may invoke it."* **Southmark v.**

23  **Trotter, Smith & Jacobs** *(1994) 212 Ga.App. 454, 442 S.E.2d 265, 266-267.*

24  27.    *"Judicial estoppel prevents a party from asserting a position in a legal*

25  *proceeding that is contrary to a position previously taken in the same or*

26  *some earlier proceeding. The doctrine serves a clear purpose: to protect the*

27  *integrity of the judicial process."* **Cleveland v. Policy Management Systems**

28  **Corp.** *(5th Cir. 1997) 120 F.3d 513, 517, fn. omitted.*

1    28.   Consequently, judicial estoppel is especially appropriate where as here a

2    Defendant has taken inconsistent positions in separate proceedings.  See, *e.g.*,

3    ***Astor Chauffeured Limousine v. Runnfeldt Inv.*** *(7th Cir. 1990) 910 F.2d 1540,*

4    *1547-1548.*  Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield*

5    *(1987) 55 Geo.Wash.L.Rev. 409, 418-419.*  See also ***Rissetto v. Plumbers and***

6    ***Steamfitters  Local 343*** *(9th Cir. 1996) 94 F.3d 597, 605.*

7    29.   Judicial estoppel bars a party from taking contradictory positions where he

8    or she (1) has taken two "*totally inconsistent*" positions (2) in judicial or

9    quasi-judicial proceedings, (3) was successful in asserting the first position, (4)

10   and the first position was not the produce of ignorance, fraud or mistake.

11   30.   Defendants took the position in previous litigation that Plaintiff could not

12   and would not suffer irreparable damage as a result of a violation of his federally

13   protected rights because Plaintiff could recover compensatory damages from

14   Defendants for such violation.

15   31.   Defendants were successful in asserting their position in that Wistrich

16   recommended to Synder that said position be adopted and Synder did adopt

17   Defendants' position in a ruling.

18   32.   Defendants took their position not out of ignorance (in fact Plaintiff had

19   previously informed the Defendants, as well as Wistrich and Synder in advance

20   citing ***Memphis Community School Dist. v. Stachura*** *(1986) 477 U.S. 299, 304*

21   *- 313, 106 S.Ct. 2537, 91 L.Ed.2d 249)* or fraud or mistake.

22   33.   However, the United States Supreme Court's ruling is not jurisdictional.

23   34.   As with Eleventh Amendment immunity, there is no rule of law that

24   prevents a person from voluntarily taking the position that he or she or it is liable

25   for compensatory damages for *per se* constitutional violations.

26   35.   In accordance with the purpose of judicial estoppel, the Doctrine of Judicial

27   Estoppel does apply to the facts of this case because: (1) the same party has taken

28   two positions – that it is liable for compensatory damages for *per se* constitutional

1  violation and that it is not liable for compensatory damages for *per se*
2  constitutional violation; (2) the positions were taken in judicial proceedings; (3)
3  the party was successful in asserting the first position (the United States District
4  Court for the Central District of California adopted the position or accepted it as
5  true); (4) the two positions are totally inconsistent; and (5) the first position was
6  not taken as a result of ignorance, fraud, or mistake. **Rissetto v. Plumbers and**
7  **Steamfitters Local 343**, *supra, 94 F.3d at pp. 604-605*; **Hindman v. Greenville**
8  **Hosp. Sys.** *(D.S.C. 1996) 947 F. Supp. 215, 221*; **Consolidated Stores Inc. v.**
9  **Gargis** *(Ala.Ct.Civ.App. 1996) 686 So. 2d 268, 274-275*; **Timothy Christian**
10 **Schools v. Village** *(Ill.App.Ct. 1996) 285 Ill. App. 3d 949, 675 N.E.2d 168, 173,*
11 *221 Ill. Dec. 261.*
12 36.    Defendants are barred by the <u>Doctrine of Judicial Estoppel</u> from asserting as
13 a defense or adopting the position that a Defendant or Defendants named in this
14 litigation, excepting **Experian**, is not subject to and liable to Plaintiff for
15 compensatory damages as a consequence of proof that said Defendant or
16 Defendants deprived Plaintiff *per se* violation of a particular federal constitutional
17 right.
18
19
# <u>First Claim for Relief</u>
20 **CLAIM FOR RELIEF AGAINST DEFENDANTS STACEY ANGST, JUAN**
21 **CARLOS CASAS, CARLOS CASAS aka JUAN CARLOS CASAS, AND**
22 **RICKENBACKER GROUP, INC. FOR VIOLATION OF FCRA**
23
24 37.    The <u>First Claim for Relief</u> is created by, arises under and is pursuant to the
25 Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681 et seq.) generally and
26 specifically 15 U.S.C. §§ 1681n(a)(1)(A), 1681n(a)(3), and 1681s-2(b). Plaintiff
27 sues **Angst, Casas** and **Rickenbacker** for willful violation of 15 U.S.C. § 1681s-
28 2(*b*).

38.   In doing the things herein complained of, **Angst, Casas** and **Rickenbacker** acted wilfully and with malice in violating 15 U.S.C. § 1681s-2(b) in that **Rickenbacker** with conscious and reckless disregard of the requirements of 15 U.S.C. § 1681s-2(b) refused to investigate **Plaintiff's dispute** after receiving written notice from Experian of said dispute.

39.   **Defendants'** above refusal to investigate was solely for the purpose of injuring Plaintiff's credit to the point Plaintiff would be vexed, annoyed and capable of being extorted into paying money demanded by **Rickenbacker**.

40.   In doing the things herein complained of, said Defendants caused Plaintiff to suffer severe **emotional distress**, financial loss, damaged Plaintiff by impairing Plaintiff's credit history thus exposing Plaintiff to higher interest charges and credit application rejections, and diminishing Plaintiff's ability to obtain credit lines in pursuit of Plaintiff's personal and business interests and plans.

41.   Accordingly, said Defendants are each liable to Plaintiff for actual damages in the amount of $500,000 dollars, court costs and reasonable attorney fees.

42.   The FCRA was originally enacted by Congress in the 1968–1969 session, and it went into effect in 1970.  The express purpose of the federal statutory scheme was to require so-called "*consumer reporting agencies*" to adopt and implement "*reasonable procedures*" for ensuring that credit information about a consumer was collected, maintained, and dispensed "i*n a manner which is fair and equitable to the consumer with regard to the confidentiality, accuracy, relevancy and proper utilization of such information ...*"  FCRA, 15 U.S.C. § 1681(b).

43.   This is not rocket science.  The duties imposed on defendants were simple to understand and easy to comply with.  Defendants, at all times herein relevant, did understand the above four duties imposed by the FCRA but made a conscious and reckless decision to disregard them.

/ / /

44.     In **2003**, in the Fair and Accurate Credit Transaction Act of 2003, Pub.L No. 108-159, § 111, 1955, codified as amended at 15 U.S.C. § 1691a(d), Congress defined "*credit*" for purposes of the FCRA as a creditor/debtor relationship where the debtor had the right to defer payment, *et al*. **Rickenbacker** was previously sued for the same misconduct herein complained of, <u>Daniel Roybal and Vida Roybal v. Trans Union, Experian Information Solutions, Equifax Information Services, Rickenbacker Group, Inc. Medamerica, and City Towing, Inc.</u>, Case No. CV-03-05471-CW.  In **2007**, the Ninth Circuit confirmed to Defendants, including **Experian**, that involuntary towing and storage charges were not "*credit*", did **not** constitute a credit transaction, and could **not** lawfully be reported to a CRA as such.  ***Pintos v. Pacific Creditors Ass'n*** *(9th Cir. 2007) 565 F.3d 1106 (nee 504 F.3d 792)*.    Notwithstanding the above, Defendants recidivistic conduct has continued and unless discouraged will continue.  Defendants' conduct is malicious, extortion and definitely not tolerated in today's society.   Accordingly, Defendants each are liable to Plaintiff for $5,000,000 dollars punitive damages.

# <u>Second Claim for Relief</u>

**CLAIM FOR RELIEF AGAINST DEFENDANTS CITY OF LOS ANGELES AND LDC COLLECTION SYSTEMS FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

45.     The <u>Second Claim for Relief</u> is created by, arises under and is pursuant to the <u>Fair Debt Collection Practices Act</u> ("FDCPA") generally, codified at 15 U.S.C. § 1692 *et seq*. and specifically 15 U.S.C. §§ 1692e(2)(A); 1692k(a)(1); 1692k(a)(2)(A); and 1692k(a)(3).

46.     At all times herein relevant, Defendants were and are  "*debt collector*" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

47.     At all times herein relevant, Plaintiff was and is a "*consumer*" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

48.    Defendants sent Plaintiff dunning letters whose contents were not allowed by the FDCPA.  In doing the things herein alleged, Defendants violated the FDCPA.

49.    Defendants are liable to Plaintiff for statutory damages of $1,000, court costs and reasonable attorney fees.  Plaintiff repeats and re-alleges and incorporates by reference the allegations in Paragraph 180 through 186 above with the same force and effect as if each is herein fully and entirely set forth.

## **Third Claim for Relief**

**CLAIM FOR RELIEF AGAINST DEFENDANTS STEVE T. AND HOWARD SUMMERS TOWING, INC.**

50.    On 2008 July 17, Defendants charged Plaintiff an excessive amount, an unnecessary amount for towing and charged Plaintiff for towing Plaintiff's vehicle a greater distance than allowed by law.

51.    Defendants are liable to Plaintiff for damages in an amount according to proof at time of trial.

## **Fourth Claim for Relief**

**CLAIM FOR RELIEF AGAINST DEFENDANTS HOWARD SUMMERS TOWING, INC., HOLLYWOOD TOW SERVICE, INC., GUEVARA, STEVE T., CITY OF LOS ANGELES, AND JOHN DOE 1**

52.    On 2008 July 17, said Defendants seized Plaintiff's vehicles under color of state law without lawful reason or probable cause.  Plaintiff promptly requested a hearing.  Defendants failed and refused to provide Plaintiff a hearing and rather disposed of one of Plaintiff's vehicles.

1  53.    Defendants in doing the things herein alleged became and are liable to

2  Plaintiff for damages according to proof at the time of trial.

3

4  ## **Fifth Claim for Relief**

5  **CLAIM FOR RELIEF AGAINST DEFENDANT EXPERIAN INFORMATION**

6  **SOLUTIONS**

7  54.    The <u>Eighth Claim for Relief</u> is created by, arises under and is pursuant to

8  the <u>Fair Credit Reporting Act</u> ("FCRA") generally, codified at 15 U.S.C. § 1681 *et*

9  *seq*., and specifically 15 U.S.C. §§ 1681n, 1681o, 1681e(b), and 1681n(a).

10  55.    **Experian** creates credit reports from information obtained through its data

11  collection systems, sells the reports electronically to subscribers such as banks,

12  credit unions, and automobile dealers, and also sells its credit reports to affiliated

13  service bureaus, which in turn sell the reports to end users or to marketeers. **Expe-**

14  **rian** is recognized as one of the Big 3 that dominate the market for credit reports.

15  56.    Plaintiff is informed and believes and thereon alleges that **Experian** at all

16  times herein relevant had, did have or does have its so-called <u>Customer Alert List</u>

17  and/or its so-called Global Security Office.  The customer alert list was restricted

18  to persons or companies that violated credit reporting statutes (such as the Fair

19  Credit Reporting Act) or that had demonstrated financial inability to perform their

20  contractual obligations to Experian.  Plaintiff is further informed and believes and

21  thereon alleges that the <u>Customer Alert List</u> was discontinued to increase

22  **Experian's** profits.  Had **Experian** placed **Rickenbacker** and **Casas** on its

23  <u>Customer Alert List</u> the things herein complained of would not have occurred.

24  57.    At all times herein relevant, **Experian** wilfully failed to maintain reasonable

25  procedures to insure the accuracy of Plaintiff's credit report.

26  58.    Plaintiff is informed and believes and thereon alleges that **Experian**, at all

27  times herein relevant, knew that **Rickenbacker** was reporting phony information

28  to **Experian** pertaining to consumers including Plaintiff in direct contravention of

1   Casas' and **Rickenbacker's** certifications and subscriber agreements with

2   **Experian**. Nonetheless, **Experian** did not place either **Rickenbacker** or **Casas** on

3   its <u>Customer Alert List</u> or notify its Global Security Office but rather deliberately

4   and knowingly accepted and used the above false information.

5   .        At all times herein relevant, **Experian** had reasonable grounds to be aware

6   and know that information provided it by **Rickenbacker** was inaccurate but

7   wilfully failed to adopt reasonable procedures and willfully failed to take any

8   reasonable steps in response. Amongst the facts and events that informed and

9   made Experian aware that information being provided it by **Rickenbacker** was

10  inaccurate was the following:

11

12        a.      Prior to this litigation, **Experian** had received complaints from other

13                consumers that **Rickenbacker** was falsely and unlawfully reporting to

14                **Experian** unpaid involuntary vehicle towing and impound charges as

15                credit transactions and credit accounts.

16

17        b.      **Experian** was and is a co-defendant with **Rickenbacker** in several

18                lawsuits wherein the plaintiff identified **Rickenbacker** as falsely and

19                unlawfully reporting to **Experian** unpaid involuntary vehicle towing

20                and impound charges as credit transactions and credit accounts.

21  60.    Plaintiff is informed and believes and thereon alleges that **Experian** knew

22  that private tow companies do not open credit accounts with motorists, including

23  Plaintiff, after their vehicles are auctioned off for storage charges.

24  61.    In doing the things herein complained of, **Experian** caused Plaintiff to

25  suffer severe **emotional distress**, financial loss, damaged Plaintiff by impairing

26  Plaintiff's credit history thus exposing Plaintiff to higher interest charges and

27  credit application rejections, and diminishing Plaintiff's ability to obtain credit

28  lines in pursuit of Plaintiff's business interests and plans.

1  62.    Accordingly, said Defendant is liable to Plaintiff for actual damages in the

2  amount of $500,000 dollars, costs and reasonable attorney fees.

3  63.    **Experian's** actions were malicious, oppressive in that Experian abused it

4  dominant position as one of the Big Three of national credit reporting agencies, of

5  the nature not tolerated in civilized society, callous in the extreme and recklessly

6  disregarding of the rights and privacy of consumers including Plaintiff.

7  Accordingly, said Defendant is liable to Plaintiff for punitive damages in the

8  amount of $1,500,000 dollars.

9

10                              **PRAYER FOR RELIEF**

11  1.    As to each Claim for Relief, the actual, nominal, compensatory, punitive

12  damages, and statutory damages specifically requested in the Complaint and each

13  said request is completely incorporated herein by this reference as though fully set

14  forth at length with equal force and effect;

15  2.    As to each Claim for equitable relief, such relief as requested in the

16  Complaint;

17  3.    For costs of suit incurred herein;

18  4.    That reasonable attorney fees be awarded; and,

19  5.     For such other and further relief as to the court may seem just.

20  / / /

21  DATED:                         2010 July 17

22

23                        By

24                             B. Benedict Waters

25                             Plaintiff, *Pro se*

26

27

28

1

# DEMAND FOR JURY TRIAL

2      Plaintiff hereby requests and demands that this within matter be tried to a

3 jury of his peers before a United States District Judge.

4 / / /

5 DATED:                          2010 July 17

6

7                    By:

8                          B. Benedict Waters

9                          Plaintiff, *Pro se*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Name & Address:
B. Benedict Waters
6230 Wilshire Blvd., # 182
Los Angeles, CA 90048-5104
310-967-3943

FOR OFFICE USE ONLY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B. Benedict Waters | CASE NUMBER |
| | CV10 5296 |
| PLAINTIFF(S) | |
| v. | |
| Attachment "A" incorporated herein by this reference as though fully set forth | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): FOR OFFICE USE ONLY

A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __B. Benedict Waters_____, whose address is __6230 Wilshire Blvd., # 182  Los Angeles, CA  90048-5104_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated: __7 - 19 - 10__

Clerk, U.S. District Court

By: _____

CHRIS SAWYER

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# Attachment "A"

Howard Sommers Towing, Inc.,

Stacey Angst,

Rickenbacker Group, Inc.,

Experian Information Solutions, Inc.

Hollywood Tow Service, Inc.,

Juan Carlos Casas,

LDC Collection Systems,

John Doe 1,

Steve T.,

John Doe 3,

Guevara,

Carlos Casas aka Juan Carlos Casas, and

City of Los Angeles

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV10- 5296 DMG (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.